UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------X
                                                       :
STASON SUTTON,                                          :
                                                       :
                                   Plaintiff,          :
                                                       :
                     - against -                       :
                                                       :
MASSACHUSETTS MUTUAL LIFE                               :
INSURANCE COMPANY,                                      :
                                                       :
                                   Defendant.          :
                                                       :
-------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/27/2020___

18-CV-1273 (VSB)

<u>**OPINION & ORDER**</u>

<u>Appearances</u>:

Adam Saul Hanski
Robert Gerald Hanski
Glen Howard Parker
Parker Hanski LLC
New York, New York

*Counsel for Plaintiff*

John William Egan
Samuel Sverdlov
Seyfarth Shaw LLP (NYC)
New York, New York

*Counsel for Defendant.*

<u>VERNON S. BRODERICK, United States District Judge</u>:

  Plaintiff Stason Sutton ("Sutton") brings this action against Defendant Massachusetts

Mutual Life Insurance Company ("Mass Mutual"), for injunctive relief as well as monetary

damages for alleged discrimination against Plaintiff under Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq*., the New York State Executive Law § 296

("NYSHRL"), New York State Civil Rights Law § 40 ("NYSCRL"), and the Administrative

Code of the City of New York § 8-107  ("NYCCRL").  Defendant filed the instant motion for

summary judgment to dismiss all of Plaintiff's claims.  Because the material facts are undisputed, I find that, as a matter of law, Defendant has not discriminated against Plaintiff under Title III of the ADA, as Defendant's alterations to the property provide Plaintiff with the appropriate accessible routes to the property in accordance with the ADA, and Defendant's motion for summary judgment dismissing Plaintiff's Complaint is GRANTED.

## I.   Background

Plaintiff Stason Sutton resides in an apartment located at 525 West 43rd Street, New York, New York.  (Pl. Fact Stat.[1] ¶ 14.)  Defendant Mass Mutual owns RB Apartments LLC, which owns a 46-story mix-use building located at the northeast corner of West 42nd Street and 11th Avenue (the "Property").  (*Id.* ¶¶ 1, 3.)  "The Property has three retail spaces, a residential entrance, and a theater, which are all located along the north side of West 42nd Street at the far west side of Midtown Manhattan in the vicinity of 11th Avenue."  (*Id.* ¶ 4.)

In 2011 and 2012 Defendant renovated the exterior of the Property.  (*Id.* ¶ 8.)  The New York City Department of Buildings received the last application for a building permit regarding this alteration on January 9, 2012.  (*Id.* ¶ 8.)  During the renovation, Defendant removed the existing stairs which led to the storefronts and installed an elevated walkway across the Property passing in front of the entrances to the retail spaces, theater, and residence ("Elevated Walkway").  (*Id.* ¶ 9.)  The Elevated Walkway is accessible to the public through eight sets of stairs equipped with handrails and illuminated light at night, as well as a sloped walkway located on 42nd Street at the eastern end of the Property (the "Sloped Walkway").  (*Id.* ¶¶ 10, 11, 20.)  Sutton routinely visits the 7-Eleven at the Property, which is located on the western end of the Property.  (*Id.* ¶ 14.)  In order to access the 7-Eleven when traveling from the west end of the

---

[1] "Pl. Fact Stat." refers to Plaintiff's response to Defendant's Rue 56.1 Statement of Undisputed Facts, Doc. 60.

Property, Plaintiff must traverse the sidewalk from the corner of 42nd Street and 11th Avenue 200 feet east to the Sloped Walkway on 42nd Street, and then back on the Property to the corner of 42nd Street and 11th Avenue.  Plaintiff concedes that when he travels west on 42nd Street from 10th Avenue towards 11th Avenue, the Sloped Walkway is the most convenient access point.  (*Id.* ¶ 16.)

## II.    <u>Procedural History</u>

Plaintiff commenced this action by filing a Complaint on February 13, 2018.  (Doc. 1.) Defendant Mass Mutual filed an Answer on April 16, 2018.  (Doc. 22.)  Defendants Subway Real Estate, LLC, and Doctor's Associates Inc., filed Answers on May 2, 2018.  (Docs. 27, 28.)

On June 7, 2018, Defendants Subway Real Estate, LLC, and Doctor's Associates, Inc., filed a notice of settlement.  (Doc. 30.)  On June 7, 2018, Judge Katherine B. Forrest, to whom this case was assigned before being reassigned to me on September 20, 2018, terminated the action.  (Doc. 31.)  On June 8, 2020, Judge Forrest issued a revised order terminating the action as to Defendants Subway Real Estate, LLC, and Doctor's Associates, Inc., and restoring the action as to Defendant Mass Mutual.  (Doc. 32.)

On April 26, 2019, Defendant Mass Mutual filed the instant motion for summary judgment.  (Doc. 53.)  Plaintiff filed his opposition to the motion for summary judgment on May 28, 2019, (Doc. 61.), and on June 18, 2019, Defendant filed its reply, (Doc. 65.)

## III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and

internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any

evidence in the record that could reasonably support a jury's verdict for the non-moving party,"

summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286

(2d Cir. 2002).

   **IV.**   <u>**Discussion**</u>

       *A.  Admissibility of the Declaration of John W. Thompson*

   Before turning to the substantive claims at issue, I first discuss the admissibility of the

Declaration of John W. Thompson, Jr., P.E. ("Thompson Declaration").  (Pl.'s Opp. Mem. 2.)[2]

Plaintiff argues that I should strike the Thompson Declaration because Thompson was not

identified as an expert witness.[3]  "Plaintiff specifically objects to the testimony in paragraphs 15

to 18 of the Thompson Declaration that are prefaced with the title of 'Accessible Features of the

Property and Related Design Considerations'", and argues that "[t]he accessibility or lack of

accessibility of the Property is a legal issue that even a disclosed expert cannot opine on."

Defendant argues in reply that the Thompson Declaration "introduces factual testimony by a fact

witness."  (Reply 8.)[4]  Because I find that certain portions of the Thompson Declaration provide

expert opinion, I decline to consider those portions but leave intact those paragraphs that provide

---

[2] "Pl.'s Opp. Mem." refers to the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.  (Doc. 61.)

[3] Although Thompson was identified as a fact witness in Defendant's initial disclosures, Plaintiff points out that the abbreviation "P.E."—which stands for professional engineer—was not included in the identification.  (*See* Pl.'s Opp. Mem. 3.)  "To become licensed, engineers must complete a four-year college degree, work under a Professional Engineer for at least four years, pass two intensive competency exams and earn a license from their state's licensure board.  Then, to retain their licenses, PEs must continually maintain and improve their skills throughout their careers." What is a PE?, *National Society of Professional Engineers*, https://www.nspe.org/resources/licensure/what-pe.

[4] "Reply" refers to the Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment.  (Doc. 65.)

information consistent with that of a fact witness.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise[.]" Fed. R. Evid. 702. "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. During discovery, Defendant disclosed one expert witness pursuant to Fed. R. Civ. P. 26(a)(2), Douglas J. Anderson of LCM Architects. (Doc. 62-1.) Defendant identified Thompson as a fact witness in its initial disclosures, not as an expert. (Pl.'s Opp. Mem. 3.)

For the purposes of this motion, I accept portions of Thompson's declaration as testimony of a fact witness, not as an expert witness, and ignore the portions that might constitute expert opinion. Thompson was retained by Mass Mutual from 2010 through 2012 to work on the design and construction at issue in this litigation. (Thompson Decl.[5] ¶ 4.) Certain portions of Thompson's declaration provide the facts relevant to the dispute from his firsthand knowledge and involvement in the project, describing in detail the specifications of the construction, and explaining the considerations of the Defendant when making the alterations. (*See generally* Thompson Decl.) Although it is true that Thompson has the qualifications of an expert, and has provided expert testimony in previous litigation, here he provides testimony as a fact witness, as he is knowledgeable of the facts specific to the construction at the time the construction and design occurred. Having credentials and qualifications to be an expert witness does not preclude

---

[5] "Thompson Decl." refers to the Declaration of James W. Thompson, Doc. 56.

that witness from testifying as a fact witness.  *Cf. United States v. Sherry*, 100 F.3d 943 (2d. Cir. 1996) (in which an IRS agent qualified as an expert testified both as an expert and as a fact witness summarizing the record evidence); *United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992) (in which the special agent testified as both a fact-witness and as an expert witness).  However, because Thompson is a fact witness, I ignore any opinions as to the accessibility of the property from a legal standpoint, as well as any opinion rendered based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

      *B.   The ADA Claims*

      Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ."  42 U.S.C. § 12182(a).  A Title III claim requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.  *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).  The parties do not dispute plaintiff has satisfied the first two of these criteria.  (Def. Mem. 5; Pl.'s Opp. Mem. 7)  The parties also do not dispute that the Property underwent an alteration as defined by the statute.  (Def. Mem. 5–6; Pl.'s Opp. Mem. 6)  What is in dispute is whether Plaintiff can demonstrate that Defendant engaged in prohibited discrimination.

      Discrimination under 42 U.S.C. § 12182 includes "with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily

accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2).

On July 26, 1991, the Department of Justice ("DOJ") issued regulations to enforce Title III of the ADA as applied to places of public accommodation (the "DOJ Regulations").  *See* 28 C.F.R. part 36.  The DOJ Regulations incorporate the 1991 Standards for Accessible Design (the "1991 Standards"), 28 C.F.R. part 36 app. D, which were revised in 2010 (the "2010 Standards"), 28 C.F.R. § 36.101 *et seq*.  Although the 1991 Standards were revised in 2010, new construction and alterations begun prior to March 15, 2012, can be made accessible by complying with either the 2010 Standards or the 1991 Standards.  *See* 28 C.F.R. § 36.406(a)(5)(i).

Under the 1991 Standards, "(1) [a]t least one accessible route complying with 4.3 shall be provided within the boundary of the site from public transportation stops, accessible parking spaces, passenger loading zones if provided and public streets or sidewalks, to an accessible building entrance[;] [and] (2) [a]t least one accessible route complying with 4.3 shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site."  1991 Standards § 4.1.2.  Under the 2010 Standards, "[a]t least one accessible route shall be provided from within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance that they serve."  2010 Standards § 206.2.1.

In accordance with both the 1991 Standards and the 2010 Standards, the Sloped Walkway installed by Defendant provides "at least one accessible route" connecting all site arrival points. The Sloped Walkway provides a route accessible from "parking spaces [. . .] public streets and sidewalks[,] and public transportation stops" to the Property.  *See* 2010 Standards § 206.2.1; *see*

*also* 1991 Standards § 4.1.2.  It is within 200 feet of the bus stop on 42nd street, and within 200 feet of the corner of 42nd Street and 11th Avenue.  (Doc. 60, Figure "F").  Accordingly, the Sloped Walkway properly connects the sidewalks, crosswalks, and public transportation with the entrances on the Property in accordance with the 2010 Standards and 1991 Standards.  Although Plaintiff is required to travel a greater distance to the Sloped Walkway when traveling from 11th Avenue and therefore he would prefer a walkway located at the corner of 42nd Street and 11th Avenue, "[n]owhere in the ADA guidelines is there the requirement that a plaintiff has the ability to select a specific pathway to make accessible when there is already another accessible route available."  *Feltenstein v. Wykagyl Assocs. HJ, LLC*, 184 F. Supp. 3d 76, 82 (S.D.N.Y. 2016).

In accordance with the 2010 Standards and 1991 Standards, the Sloped Walkway provided by Defendant is in the same area as the general circulation path.  A circulation path is defined as "[a]n exterior or interior way of passage provided for pedestrian travel, including but not limited to, walks, hallways, courtyards, elevators, platform lifts, ramps, stairways, and landings."  2010 Standards § 106.5; *see also* 1991 Standards § 3.5 (defining "circulation path" as substantially the same as above and "accessible route" as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility").  The Sloped Walkway connects the Elevated Walkway of the Property with the sidewalk on 42nd Street, is within 200 feet of the sidewalk on 11th Avenue, and is within 200 feet of the bus stop on 42nd Street.  The Sloped Walkway is in the same area as the residential entrance on the Property, which serves 418 apartments, and leads directly to the UCB Theater, which has a maximum capacity of 215 people.  (*Id.*; Exhibit A to Thompson Decl.)  The Sloped Walkway, therefore, is in the same general area as, and connects the Elevated Walkway on the Property with, the general circulation path.  Indeed, the Sloped Walkway is part of the circulation path.

Plaintiff's argument that Defendant failed to adhere to the requirements of the 1991 and 2010 Standards "because less than 50% of its public entrances . . . are accessible"—citing to § 206.4.1 of the 2010 Standards which requires 60% of public entrances to be accessible, (Pl. Mem. 9-10)—lacks merit. The "public entrances" in section 206.4.1 refer to "doors, doorways, and gates" and entrances to buildings, not access points to a property. *See* 2010 Standards § 206.4.1. The definition of "entrance" in section 106.5, also cited by Plaintiff, states that an entrance includes the approach walk; Plaintiff argues, therefore, that the access points to the Elevated Walkway are each considered "entrances." This is incorrect. As section 106.5 makes clear, "entrances" to the buildings, such as the doors to each storefront, include the approach walk in front of the doors. 2010 Standards § 106.5. Therefore, according to section 106.5, the Elevated Walkway itself is considered a part of the entrance to each of the stores on the Property. However, it does not mean the access points to the Elevated Walkway are themselves considered entrances. Accordingly, Defendant is under no obligation to have 60% of the access points to the Elevated Walkway accessible.

Plaintiff's argument that he generally approaches the Property from 11th Avenue and must travel an additional 200 feet to reach the Sloped Walkway when approaching the Property from that direction is insufficient to constitute discrimination under the ADA. Plaintiff cites to *Celeste v. East Meadow Union Free School District*, 373 F. App'x 85 (2d Cir. 2010), to support his argument that "longer routes for the disabled" violate the ADA. *Celeste* is distinguishable. First, Plaintiff admits that the route is only longer when traveling from 11th Avenue, and is shorter when traveling from 10th Avenue, which Plaintiff does 20 percent of the time. (Pl. Fact. St. ¶¶ 16, 18). Second, *Celeste* is inapposite, as the Plaintiff in *Celeste* was forced to take a twenty-minute detour round trip to and from the athletic fields, which detracted from his

"participation as a manager of the football team," and "cut almost in half his time to participate in a typical forty-five minute physical education class."  373 F. App'x at 89.  Sutton's burden of having to traverse an additional 200 feet in each direction in order to access the 7-Eleven on the Property when he approaches the Property from 11th Avenue does not reach the level of the Plaintiff's burden in *Celeste*.

Plaintiff's contention that the Sloped Walkway does not comply with § 4.3.2 of the 1991 Standards as it does not "to the maximum extent feasible, coincide with the route for the general public," is also without merit.  First, the corresponding section of the 2010 Standards which Plaintiff cites to, § 206.2.1, does not include the language of "maximum amount feasible." Instead, the 2010 Standards state "[a]ccessible routes shall coincide with or be located in the same areas as general circulation paths."  2010 Standards § 206.3.  As explained above, the Sloped Walkway is in the same area as general circulation paths, and therefore satisfies the requirements of the 2010 Standards.  However, even if I assume Defendant was required to meet the "maximum amount feasible" standard, Plaintiff has not put forth sufficient evidence to create an issue of fact concerning whether the Sloped Walkway coincides with the route for the general public to the maximum amount feasible.  Defendant asserts the Sloped Walkway is located on the section of the property with the lowest elevation relative to the sidewalk, creating a gentler slope for the Sloped Walkway.  (Thompson Decl. at 17).[6]  The Sloped Walkway is in the same area as the residential entrance on the Property, which serves 418 apartments, and leads directly to the UCB Theater, which has a maximum capacity of 215 people.  (*Id.*; Exhibit A to Thompson Decl.)  Although Defendant has not performed a pedestrian traffic study to determine whether

---

[6] I reiterate that I do not accept Thomson's opinion testimony as expert testimony, rather I only accept his testimony as to the facts relating to the construction of the Elevated Walkway.  In this instance, the measurements of the elevation of the Property from the sidewalk is an objective fact, and is not opinion testimony.  Defendant does not dispute these measurements.

more pedestrians approach the property from 10th Avenue than from 11th Avenue, Plaintiff also

has not performed a study to the contrary, and provides no evidence to demonstrate that the

Sloped Walkway does not coincide with the "route for the general public" to the maximum

amount feasible.  Plaintiff does not identify any facts in the record to support his assertion that

Defendant did not provide an accessible entrance that coincides with the route provided to the

general public to the "maximum amount feasible."  Plaintiff's conclusory and unsupported

assertion does not create an issue of fact so as to preclude summary judgment. *Anderson*, 477

U.S. at 248 ("a party opposing a properly supported motion for summary judgment . . . must set

forth specific facts showing that there is a genuine issue for trial." (internal quotation marks

omitted)).

Accordingly, Plaintiff's claims that Defendant has not complied with Title III of the ADA

must be dismissed.

### C.  New York State and City Law Claims

Having dismissed Plaintiff's federal claim, I decline to exercise supplemental jurisdiction

over Plaintiff's remaining claims arising under New York State and New York City law, and

common law negligence.[7]  Under 28 U.S.C. 1337(c), a district court should decline to exercise

jurisdiction if "the district court has dismissed all claims over which it had original jurisdiction."

*Karmel v. Claiborne, Inc.*, No. 99 Civ.3608IWK), 2002 WL 1561126, at *2 (S.D.N.Y July 15,

2002) (citing *Seabrook v. Johnson*, 153 F.3d 70 (2d Cir. 1998)); *see also Louis v. New York City

Housing Auth.*, 152 F. Supp 3d 143, 159 (S.D.N.Y. 2016) (declining to exercise supplemental

jurisdiction over state law negligence and discrimination claims after dismissing ADA claims).

---

[7] I note that in Plaintiff's Memorandum of law there is a dangling heading without any related text which states "Plaintiff withdraws his claim for negligence." (Pl. Mem. 1.)  It is not clear what this heading is meant to signify. Therefore, I address Plaintiff's common law negligence claim.

Accordingly, Plaintiff's claims under the NYSHRL, NYSCRL, NYCHRL, and common law negligence claims are dismissed.

**V.**      <u>**Conclusion**</u>

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's claims are dismissed in their entirety.

The Clerk's Office is respectfully directed to terminate the motion at Document 53, and close the case.

SO ORDERED.

Dated: September 27, 2020
      New York, New York

Vernon S. Broderick
United States District Judge